# UNITED STATES v. ROMERO-LOPEZ

Case No. 18-cr-00096-LTB

Attachment 2

Official Website of the Department of Homeland Security


ICE

Report Crimes: Email or Call 1-866-DHS-2-ICE

# Archived Content

In an effort to keep ICE.gov current, the archive contains content from a previous administration or is otherwise outdated. This information is archived and not reflective of current practice.

# Priority Enforcement Program

ERO

Priority Enforcement Program (PEP) was U.S. Immigration and Customs Enforcement (ICE) program from 2015 to 2017. This content is now archived. Read more about the program's history below.

The Department of Homeland Security's (DHS) Priority Enforcement Program (PEP) enables DHS to work with state and local law enforcement to take custody of individuals who pose a danger to public safety before those individuals are released into our communities. PEP was established at the direction of former DHS Secretary Jeh Johnson in a November 20, 2014 memorandum, entitled Secure Communities, that discontinued the Secure Communities program. PEP focuses on convicted criminals and others who pose a danger to public safety.

## How it works

PEP begins at the state and local level when an individual is arrested and booked by a law enforcement officer for a criminal violation and his or her fingerprints are submitted to the FBI for criminal history and warrant checks. This same biometric data is also sent to U.S. Immigration and Customs Enforcement (ICE) so that ICE can determine whether the individual is a priority for removal, consistent with the DHS enforcement priorities described in former Secretary Johnson's November 20, 2014 Secure Communities memorandum. Under PEP, ICE will seek the transfer of a removable individual when that individual has been convicted of an offense listed under the DHS civil immigration enforcement priorities, has intentionally participated in an organized criminal gang to further the illegal activity of the gang, or poses a danger to national security.

## What are DHS' priorities for removal?

PEP builds upon the enforcement priorities set forth in the November 20, 2014 Memorandum from former DHS Secretary Jeh Johnson entitled *Policies for the Apprehension, Detention and Removal of Undocumented Immigrants*.

## Forms

Under PEP, DHS does not use the Form I-247 (Immigration Detainer – Notice of Action) and instead uses two new forms:

- *Form I-247N, Request for Voluntary Notification of Release of Suspected Priority Alien:* The Form I-247N requests the receiving local law enforcement agency (LEA) notify ICE of the pending release from custody of a suspected priority removable individual at least 48 hours prior to release, if possible. The Form I-247N does not request or authorize the LEA to hold an individual beyond the point at which he or she would otherwise be released. Additionally, on the Form I-247N, ICE must identify the enforcement priority under which the individual falls.

- *Form I-247D, Immigration Detainer - Request for Voluntary Action:* The Form I-247D requests the receiving LEA maintain custody of the priority individual for a period not to exceed 48 hours beyond the time when he or she would have otherwise been released from custody. On this form, ICE must identify the enforcement priority under which the individual falls, as well as the basis for its determination of probable cause. The LEA must also serve a copy of the request on the individual in order for it to take effect.

- *Form I-247-X, Request for Voluntary Transfer:* This form is for enforcement priorities that do not fall under the Priority Enforcement Program (PEP). The Form I-247X requests the receiving LEA maintain custody of the priority individual for a period not to exceed 48 hours beyond the time when he or she would have otherwise been released from custody. The priority subcategories not covered by PEP, but for which ICE may otherwise seek transfer from cooperative jurisdictions are:

- 1(b) – Aliens apprehended while attempting to illegally enter the country
- 2(c) – Unlawfully present aliens who have not resided continuously in U.S. since January 1, 2014
- 2(d) – Aliens determined by an FRO to have significantly abused the visa or visa waiver programs
- 3 – Aliens issued final removal orders on or after January 1, 2014

Also, ICE may work with cooperating states or localities to arrange for the transfer of a removable individual whose removal has been determined by a senior ICE official to serve an important federal interest.

## Public Information

ICE's Enforcement and Removal Operations (ERO) is committed to a transparent process and to resolving concerns as promptly as possible. For this reason, concerns or questions regarding ICE practices, policies and/or programs should first be directed to the local field liaison. Stakeholders can reach out to their local field office through the ERO Contact page.

## How is PEP different from Secure Communities?

PEP focuses on targeting individuals convicted of significant criminal offenses or who otherwise pose a threat to public safety. Under prior policy, detainers could be issued when an immigration officer had reason to believe the individual was removable and fell within one or more enumerated priorities, which included immigration-related categories and having been convicted of or charged with certain crimes.

Under PEP, ICE will only seek transfer of individuals in state and local custody in specific, limited circumstances. ICE will only issue a detainer where an individual fits within DHS's narrower enforcement priorities and ICE has probable cause that the individual is removable. In many cases, rather than issue a detainer, ICE will instead request notification (at least 48 hours, if possible) of when an individual is to be released. ICE will use this time to determine whether there is probable cause to conclude that the individual is removable.

### Comparison of Secure Communities and Priority Enforcement Program

| Secure Communities | Priority Enforcement Program |
|---|---|
| Relied on fingerprint based biometric data submitted during bookings by state and local law enforcement agencies to the FBI for criminal background checks. | Continues to rely on fingerprint-based biometric data submitted during bookings by state and local law enforcement agencies to the FBI for criminal background checks. |
| Prior to December 21, 2012, the only policy limitations on detainer issuance were that: (1) a law enforcement agency (LEA) had exercised its independent authority to arrest the individual; and (2) the immigration officer had reason to believe that the individual was subject to ICE detention for removal or removal proceedings. Circumstances under which a detainer could be issued were narrowed by a December 12, 2012 policy memorandum, but still included individuals charged, but not yet convicted, of criminal offenses, in addition to individuals with no criminal history, such as individuals with final orders of removal from an immigration judge. Detainers could also be issued in circumstances in which ICE determined an individual posed a significant risk to national security, border security, or public safety. | A November 20, 2014 memorandum from DHS Secretary Jeh Johnson significantly narrows the category of individuals for whom DHS will seek transfer from LEA custody and prioritizes individuals who pose a threat to public safety. Under PEP, ICE will no longer seek transfer of individuals with civil immigration offenses alone, or those charged, but not convicted of criminal offenses. Instead, ICE will seek transfer where a removable individual has been convicted of specifically enumerated crimes, has intentionally participated in criminal gang activity, or poses a danger to national security. |
| Requested that LEAs detain an individual beyond his or her scheduled release date. | In many cases, ICE will simply request notification of when an individual who falls within the PEP priorities is to be released— rather than issue a request for detention beyond that point. Under PEP, detainers may only be issued in limited circumstances, when ICE indicates on the form that the individual is both a PEP enforcement priority and that there is probable cause to believe that the subject is removable (such as a final order of removal). |
| Detainer form **requested** that LEA provide a copy to the individual subject to the detainer. | Detainer form **requires** that LEA provide a copy to the individual subject to the detainer **in order for the request to be effective**. |
| Request to maintain custody was limited to 48 hours, excluding Saturdays, Sundays, and holidays. | Request to maintain custody is limited to 48 hours. Saturdays, Sundays, and holidays are no longer excluded. |

| Secure Communities | Priority Enforcement Program |
|---|---|
| Basis for "reason to believe" the subject was removable, and therefore subject to a request for detention, was not disclosed on the detainer form. | Detainer form requires that the basis for "probable cause" that an individual is removable be indicated:<br>• final order of removal;<br>• pendency of removal proceedings;<br>• biometric match reflecting no lawful status or otherwise removable; or<br>• statements by the subject to an immigration officer and/or other reliable evidence. |
| Some ICE detainers were issued with respect to foreign-born individuals who did not have records or a biometric match in ICE databases without any other additional information. | ICE no longer issues detainers in cases of foreign-born individuals who do not have records or a biometric match in ICE databases, without any other additional information. Detainers must include an indication of probable cause and that the individual is an enforcement priority under PEP. |

View archived Secure Communities page →

## Related Information

### FAQs

- Relating to Executive Action on Immigration
- PDF Version
- PEP Brochure
- PEP Overview

Last Reviewed/Updated: 06/22/2017