***UNITED STATES v. ROMERO-LOPEZ***

Case No. 18-cr-00096-LTB

---

Attachment 4




**Privacy Impact Assessment Update**
**for the**

# Alien Criminal Response Information Management System (ACRIMe)

**DHS/ICE/PIA–020(b)**

**January 24, 2013**


**Contact Point**
**Gary Mead**
**Enforcement and Removal Operations**
**U.S. Immigration and Customs Enforcement**
**(202) 732-3100**

**Reviewing Official**
**Jonathan R. Cantor**
**Acting Chief Privacy Officer**
**Department of Homeland Security**
**(202) 343-1717**





## Abstract

The Alien Criminal Response Information Management System (ACRIMe) is an information system used by U.S. Immigration and Customs Enforcement (ICE) headquarters and field personnel to receive and respond to immigration status inquiries made by other agencies about individuals arrested, subject to background checks, or otherwise encountered by those agencies. The original ACRIMe Privacy Impact Assessment (PIA) was published on April 22, 2010, and was updated on September 29, 2010. ICE is updating the PIA again to address the following changes: (1) the current interoperability process, which compares biometrics submitted to the Federal Bureau of Investigation's (FBI) Integrated Automated Fingerprint Identification System (IAFIS)/Next Generation Identification (NGI) against the United States Visitor and Immigrant Status Indicator Technology Program's Automated Biometric Identification System (IDENT), has expanded to include additional agencies submitting biometric-based immigration status inquiries to ICE for additional purposes; (2) the fingerprints of alien registrants on the National Sex Offender Registry will be compared against IDENT to permit ICE to identify convicted alien sex offenders who are amenable to removal from the United States under the Immigration and Nationality Act; and (3) the ACRIMe Tipline Module is being retired.

## Overview

*Interoperability*

The original ACRIMe PIA described the "interoperability" process between IDENT and IAFIS/NGI used to support the ICE Secure Communities Program. Under interoperability, the fingerprints of individuals arrested by or in the custody of a criminal justice agency participating in the Secure Communities Program are sent to IAFIS/NGI for matching against the FBI's criminal fingerprint holdings. Through interoperability, the fingerprints are also checked against IDENT and, if there is a match in IDENT, the FBI generates an Immigration Alien Query (IAQ) that is sent to ACRIMe. An ICE employee uses ACRIMe to research the subject of the IAQ, determine the immigration status of the subject, and generate an Immigration Alien Response (IAR), which ACRIMe sends back to the FBI Criminal Justice Information Services (CJIS) Division. The FBI combines and sends the IDENT response and the IAR back to the agency that conducted the fingerprint check for awareness if they are technically capable of receiving the response. ACRIMe also sends the IAR to the appropriate ICE field office to determine the appropriate enforcement action, if any, to take against the individual.[1]

Since the original ACRIMe PIA was published, ACRIMe's use has been expanded to assist other agencies that use Department of Homeland Security (DHS)–Department of Justice

[1] For more information on the interoperability process, see DHS/ICE/PIA–020 Alien Criminal Response Information Management System (ACRIMe), April 22, 2010 (http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_ice_acrime.pdf), and DHS/NPPD/USVISIT/PIA-007 Biometric Interoperability between the U.S. Department of Homeland Security and the U.S. Department of Justice at http://www.dhs.gov/privacy-documents-us-visit.





(DOJ) Interoperability to screen individuals for various purposes, including administration of criminal justice, national security, and background checks/investigations conducted for employment, access, and other suitability purposes. The existing process is used for all the new uses. The agencies submit an individual's fingerprints in order to ascertain his or her immigration status. ICE receives an IAQ in ACRIMe if there is a match in IDENT and, using the process described above, ICE researches the individual and sends back a response. These other agencies use the information returned by ACRIMe, along with other information they collect, to help them with their activities. For example, the information provided by ACRIMe assists some agencies in vetting job applicants and determining their suitability for a particular job. The appendices to this PIA list the new uses of interoperability that ACRIMe now supports. The appendices will be updated as new interoperability users are added and as existing users change how they use interoperability. It should be noted that although ACRIMe is supporting new uses under interoperability, the process by which IAQs (queries) are submitted to ACRIMe and IARs (responses) are sent back to the FBI CJIS Division, and ultimately to the agency submitting the request, remains the same. The new interoperability uses described in the appendices to this PIA will also be addressed in a forthcoming IDENT PIA update.[2]

*National Sex Offender Registrants*

Using interoperability, ICE will begin to screen convicted sex offenders whose fingerprints are captured during federal, state, local, and tribal law enforcement processes that enroll these individuals in sex offender registries. ICE places a high priority on targeting for removal those aliens with criminal records who pose a threat to public safety, such as sex offenders. When a convicted sex offender is released from incarceration, the individual is required to register as a sex offender with authorities in the state in which he or she resides. During the registration process, state authorities typically capture the individual's fingerprints and biographic information and transmit them to the FBI CJIS Division for inclusion in the National Sex Offender Registry,[3] and to update IAFIS and the individual's FBI criminal record. Via interoperability, the FBI CJIS Division automatically runs the individual's fingerprints against IDENT. If the fingerprints match fingerprints in IDENT, an IAQ is generated and sent to ACRIMe. ICE users research the immigration status of the individual and generate an IAR containing the results of that research in ACRIMe. The IAR is sent to the relevant ICE field office, which determines the appropriate enforcement action to take against the individual, if any. For example, if the IAR indicates the convicted sex offender is an alien who is now amenable to removal from the United States due to the conviction, the ICE field office will take appropriate

---

[2] For more information on the expanded uses of interoperability, see DHS/NPPD/USVISIT/PIA-007 Biometric Interoperability between the U.S. Department of Homeland Security and the U.S. Department of Justice and DHS/NPPD/USVISIT/PIA-002 Enumeration Services of the Automated Biometric Identification System (IDENT) at http://www.dhs.gov/privacy-documents-us-visit.

[3] The U.S. Government does not host or maintain information in the National Sex Offender Registry. Rather, such information is hosted by each jurisdiction. For more information, see the National Sex Offender Public Website at http://www.nsopw.gov/Core/Portal.aspx.





action in line with ICE's enforcement priorities to locate and arrest the alien and initiate a removal proceeding in U.S. Immigration Court. A similar process is used when there are changes to the convicted sex offender's information. The state authorities send the individual's information to the FBI CJIS Division. They update the person's record, run the individual's fingerprints against IDENT, and, if the fingerprints match fingerprints in IDENT, an IAQ is generated and sent to ACRIMe.

The processing of the convicted sex offender information varies from the standard interoperability process in one respect only: ACRIMe does not send a copy of the IAR to the FBI CJIS Division or to the agency that registered the sex offender. Instead, the IAR is only distributed and used within ICE for enforcement purposes.

*ACRIMe Tipline Module*

Previously, ICE recorded tips about suspicious activity or suspected illegal activity made by members of the public or by other criminal justice agencies in the ACRIMe Tipline Module.[4] This module is being retired and replaced by the FALCON Tipline (FALCON–TL) information system. The tips currently stored in the Tipline Module will be migrated to FALCON–TL.[5]

# Reason for the PIA Update

The PIA for ACRIMe was last updated September 29, 2010, and reflected the system at that time. ACRIMe's use has changed to better support interoperability and ICE's changing operational needs. ICE is updating this PIA to reflect those changes.

# Privacy Impact Analysis

### Authorities and Other Requirements

Authority for maintenance of the system is provided in § 504 of the Immigration and Nationality Act of 1990 (Public Law 101–649); 8 U.S.C. §§ 1103, 1324(b)(3), and 1360(b); the Brady Handgun Violence Prevention Act (Brady Act) of 1993, Public Law 103–159 (18 U.S.C. § 922(d)(5) and (g)(5)); FY 2008 Consolidated Appropriations Act (Public Law 110–161, 121 Statutes 1844 and 2050 (2007)); and the Immigration and Nationality Act (INA) provisions regarding removal of criminal aliens (INA §§ 237(a)(2) and 238).

The DHS/ICE–007 Law Enforcement Support Center (LESC) Alien Information Management (ACRIMe) System of Records Notice (SORN) applies to the ACRIMe

---

[4] For more information on the Tipline Module, see DHS/ICE/PIA-020 Alien Criminal Response Information Management System (ACRIMe), April 22, 2010 (http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_ice_acrime.pdf).

[5] For more information on FALCON–TL, see the DHS/ICE/PIA-033 FALCON Tipline (http://www.dhs.gov/sites/default/files/publications/privacy/PIAs/privacy_pia_ice_falcon%20tipline_november2012.pdf).





information.[6] This SORN is being updated concurrently with this PIA to: (1) add new categories of individuals not currently described in the existing SORN for new interoperability projects; (2) update the routine uses regarding how the data in the system is shared; and (3) update the retention period information for Brady Act check records in ACRIMe for biometric and biographic immigration status check records for National Sex Offender Registrants, and for individuals for whom non-criminal queries are conducted.

The ACRIMe SORN incorrectly stated that Brady Act check records are kept in ACRIMe for twenty-four (24) hours. The records are retained for five (5) years in order to provide ICE with sufficient time to follow up on any leads generated by Brady Act record check information. The ACRIMe PIA dated April 22, 2010, correctly listed the retention period as five (5) years. The SORN is being updated to reflect the correct retention period. Additionally, the SORN is being updated to reflect the retention period for biometric and biographic immigration status check records for National Sex Offender Registrants, and for individuals for whom non-criminal queries are conducted. There is more information about record retention below.

ACRIMe received its Authority to Operate in April 2010. The records retention schedule is being developed and will be sent to the National Archives and Records Administration for approval.

**Characterization of the Information**

As noted above, by expanding the uses of interoperability, information about additional categories of individuals is now stored in ACRIMe. These categories of individuals and additional uses are discussed in detail in the appendices, and are also included in the update to the DHS/ICE–007 ACRIMe SORN published concurrently with this PIA. Additionally, ACRIMe will include information on aliens who are registered sex offenders. Even though the categories of individuals about whom ACRIMe has information are expanding, ACRIMe continues to capture the same types of information about these individuals. No new information is being captured.

Including information about new categories of individuals for whom ICE receives an IAQ in ACRIMe—national sex offender registrants and individuals submitted for screening by other agencies—presents a risk that the individuals in question are unaware that their data is being captured and processed by ICE, especially because ICE is not collecting this information directly from the individuals. This risk is mitigated by the general notice provided by publication of this PIA and the associated update to the DHS/ICE–007 ACRIMe SORN. It is also mitigated by the notices provided to the individuals by the agencies that are collecting this information on them. For example, agencies performing background checks on their personnel in order to make employment or suitability decisions provide notice to the individuals that a background check will be performed.

**Uses of the Information**

---

[6] *See* http://www.dhs.gov/system-records-notices-sorns#6.





*Interoperability Users*

ACRIMe was first used with interoperability to determine the immigration status of aliens who were arrested by or in the custody of agencies in jurisdictions that participate in the Secure Communities Program. The use of interoperability and ACRIMe has now been expanded to support other agencies that submit fingerprints to the FBI CJIS Division for other purposes, such as the administration of criminal justice, national security, and background checks/investigations for employment, access, and other suitability purposes. As noted above, these other agencies use the information returned by ACRIMe, along with other information they collect to help them with their activities. For example, the information provided by ACRIMe assists some agencies in vetting job applicants and determining their suitability for a particular job. These new users and new programs are described in detail in the appendices to this PIA, which will continue to be updated as new interoperability projects supported by ACRIMe are added.

*National Sex Offender Registrants*

ICE is expanding the use of ACRIMe to support ICE's efforts to identify aliens who are convicted sex offenders. ICE receives an IAQ in ACRIMe and, after the ACRIMe user has researched the IAQ, an IAR is created in ACRIMe and shared only with the relevant ICE field office for them to take the appropriate enforcement or follow up action.

The expanded use of ACRIMe to include processing information on new categories of individuals poses the risk that ACRIMe is being used in a manner that is inconsistent with its intended purpose. This risk is mitigated by the fact that new interoperability users must go through a vetting process within DHS that considers the risk of mission creep and evaluates the consistency and compatibility of using the system for new populations of individuals. In addition, the inclusion of the convicted sex offenders and the new categories of individuals described in the appendices to this PIA is consistent with the purpose of ACRIMe and with one of the primary ICE missions, which is to identify aliens who are amenable to removal from the United States using both biometric and biographic-based queries submitted to ICE. Additionally, these new uses of ACRIMe are consistent with the law enforcement purpose of the system.

**Notice**

There are changes to the notice procedures. ICE is publishing an update to the DHS/ICE–007 ACRIMe SORN in the *Federal Register*, concurrent with the publication of this PIA. The SORN lists the updated categories of individuals contained in the system, additional routine uses for sharing the data in the system, and updates record retention information to correct the retention period for Brady Act check records, and to add the retention period for records about National Sex Offender Registrants and individuals for whom non-criminal queries are conducted. There is a potential risk that the general public is not aware of the existence of ACRIMe, and the possibility that information pertaining to a specific individual may exist in ACRIMe. The publication of the ACRIMe PIA, the subsequent PIA updates, and the ACRIMe SORN mitigate





this risk by providing a detailed description of the types of individuals whose information is contained in the system, the types of data it contains, and how the data is used.

**Data Retention by the Project**

There are three updates related to data retention in the DHS/ICE–007 ACRIMe SORN. First, the SORN is being corrected to state that Brady Act check records are being kept in ACRIMe for five (5) years in order to provide sufficient time to follow up on leads generated by the information. Second, the IAQ and IAR records pertaining to biometric and biographic immigration status checks for National Sex Offender Registrants will be maintained for seventy-five (75) years. Third, the IAQ and IAR records pertaining to non-criminal biometric and biographic immigration queries will be retained for thirty (30) years.

**Information Sharing**

There are two changes in information sharing. First, ICE will return IARs for the agencies listed in the appendices that submit IAQs to ICE via the interoperability process. ICE continues to send IARs for these queries to the FBI CJIS Division, which in turn combines the IDENT response and the IAR and passes them to the originating agency, if technically capable. The originating agencies are restricted from further disseminating this information by the requirements in the Interoperability Memorandum of Understanding among DHS, DOJ, and the U.S. Department of State (DOS). The originating agencies are able to share the information only with other criminal justice agencies that are working with them on the given law enforcement activity. Second, the update to the DHS/ICE–007 ACRIMe SORN includes a number of new routine uses. These have been summarized below:

- To federal, state, local, tribal, territorial, or international agencies seeking to verify or ascertain the citizenship or immigration status of an individual for a purpose within the agency's jurisdiction;
- To a former employee of DHS for purposes of responding to an official inquiry or facilitating communications with a former employee that may be relevant for personnel-related or other official purposes;
- To prospective claimants and their attorneys for the purpose of negotiating the settlement of an actual or prospective claim against DHS prior to litigation or proceedings;
- To DOJ, FBI in order to facilitate responses to fingerprint-based immigration status queries;
- To federal, state, local, tribal, territorial, international, or foreign government agencies or entities to enable consultation to assist in the processing of redress requests;
- To federal, state, local, tribal, territorial, foreign, or international agencies regarding a requesting agency's decision concerning the hiring or retention of an individual, or if





the information is relevant and necessary to a DHS decision concerning hiring or retention;

- To federal, state, local, tribal, territorial, foreign, or international agencies, if DHS determines the information is relevant and necessary to the agency's decision concerning the hiring or retention of an individual and failure to disclose the information is likely to create a risk;
- To federal, state, local, tribal, territorial, foreign, or international agencies seeking information on the subjects of wants, warrants, or lookouts for law enforcement purposes;
- To federal, state, local, tribal, territorial, foreign government agencies or organizations, or international organizations lawfully engaged in collecting law enforcement intelligence;
- To foreign governments in order to notify them concerning an alien who is incapacitated, an unaccompanied minor, or deceased; and
- To federal, state, local, tribal, and territorial courts or government agencies involved in criminal investigation or prosecution, pretrial services, sentencing, parole, probation, or other aspects of the criminal justice process, and to counsel representing an individual in a proceeding, in order to ensure the integrity of the justice system by informing these recipients of the existence of an immigration detainer on that individual or that individual's status in removal proceedings, voluntary departure, or custodial status/location.

These changes in sharing do not introduce any new privacy risks. They are compatible with the law enforcement purposes for which the data is collected.

**Redress**

There are no changes to the individual access, redress, and correction procedures described in the ACRIMe PIA, the subsequent ACRIMe PIA updates, and the ACRIMe SORN. If it is discovered that information that was sent in an IAR was incorrect either due to an error or due to new information that is available about the individual, the IAR is amended and resent.

**Auditing and Accountability**

There are no changes that affect auditing or user accountability in ACRIMe. User access within the system continues to be controlled by user accounts, and users continue to take mandatory training, including privacy and security training. Additionally, recipients of the information in the IAR from ICE receive training to ensure that they know how to properly handle and protect the information.

If an agency requests to start submitting queries through interoperability to determine the immigration status of individuals, or if an agency wants to change the types of individuals it





submits as queries through interoperability, the agency must submit an application to the Interoperability New User Working Group, of which ICE is a member. The application explains the categories of individuals to be vetted and the reason why the agency wants to use interoperability for the vetting process. The working group considers the application and whether or not the proposed purpose is in line with the requirements in the Interoperability Memorandum of Understanding among DHS, DOJ, and DOS. Agencies whose applications are approved are allowed to submit queries under interoperability while those whose applications are denied are not.

## Responsible Official

Lyn Rahilly
Privacy Officer
U.S. Immigration and Customs Enforcement
Department of Homeland Security

## Approval Signature

Original signed and on file with the DHS Privacy Office.

________________________________

Jonathan R. Cantor
Acting Chief Privacy Officer
Department of Homeland Security





The following appendices contain brief descriptions of the agencies submitting queries through interoperability thus resulting in information about new categories of individuals being stored in ACRIMe.

**APPENDIX A**

**Organization:**

DOJ, FBI Bioterrorism Risk Assessment Group (FBI/BRAG).

**Purpose and Use:**

FBI/BRAG's role is to enhance national security and public safety by providing the timely and accurate determination of an individual's eligibility to use, possess, or transfer select biological agents and toxins. Candidates are evaluated for access to select agents and toxins against criteria delineated in the Public Health Security and Bioterrorism Preparedness and Response Act of 2002, and against prohibitive categories defining a restricted person in the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT ACT) of 2001. As part of the process used to assess candidates, BRAG submits individuals' fingerprints through interoperability in order to ascertain their immigration status. Fingerprints that match in IDENT generate IAQs that are sent to ACRIMe. ICE researches the individuals and sends IARs back to the FBI CJIS Division. The FBI CJIS Division then passes the information it receives from DHS to BRAG. BRAG uses this information, along with other information that it collects during the background check process, to determine whether or not the individuals should be able to possess, use, or transfer select biological agents and toxins.

**Individuals Impacted:**

Individuals who are candidates for access to select biological agents or toxins.

**Data Elements:**

ACRIMe may return various information to the FBI CJIS Division about the individual, which the FBI CJIS Division then passes on to FBI/BRAG:

- Name and aliases;
- Date and place of birth;
- Identifiers, including Alien Registration number and FBI number;
- ICE office controlling the alien's Alien File (File Control Office); and
- Information regarding the legal status of the individual.

Please see DHS/ICE/PIA–020 for a more complete discussion of the data elements contained in ACRIMe.






**APPENDIX B**

**Organization:**

DOS, Bureau of Diplomatic Security (DS), Security Infrastructure Directorate (SI), Office of Personnel Security and Suitability (PSS).

**Purpose and Use:**

The mission of DOS/DS/SI/PSS is to screen DOS personnel to ensure that they can be granted access to classified information, and that they do not pose a risk to national security. DOS/DS/SI/PSS conducts background investigations for both applicants and current employees of the foreign and civil services, as well as for DOS contractors. DOS/DS/SI/PSS also assists regional security officers, who are responsible for conducting non-criminal investigations of individuals in the embassies and consulates around the world.

Under interoperability, PSS submits an individual's fingerprints in order to ascertain his or her immigration status. Fingerprints that match in IDENT generate IAQs that are sent to ACRIMe. ICE researches the individual and sends IARs back to the FBI CJIS Division. The FBI CJIS Division then passes the information it receives from DHS to PSS. PSS incorporates this information into the investigation that it is performing.

**Individuals Impacted:**

Individuals who are seeking employment with DOS or access to DOS facilities.

**Data Elements:**

ACRIMe may return various information to the FBI CJIS Division about the individual, which the FBI CJIS Division then passes on to DOS/DS/SI/PSS:

- Name and aliases;
- Date and place of birth;
- Identifiers, including Alien Registration number and FBI number;
- ICE office controlling the alien's Alien File (File Control Office); and
- Information regarding the legal status of the individual.

Please see DHS/ICE/PIA–020 for a more complete discussion of the data elements contained in ACRIMe.





**APPENDIX C**

**Organization:**

Federal, state, local, and tribal criminal justice agencies.

**Purpose and Use:**

When federal, state, local, and tribal criminal justice agencies investigate, arrest, and/or book a transfer to another criminal justice agency, conduct parole and probation activities, or take any other law enforcement action against an individual for a potential or actual violation of a criminal statute, they generally fingerprint the person. After fingerprints are taken, the criminal justice agency electronically submits the fingerprints to the FBI either directly or through their respective State Identification Bureau (SIB). Through interoperability, fingerprints that match in IDENT generate IAQs that are sent to ACRIMe. ICE researches the individuals and sends IARs back to the FBI CJIS Division. The FBI CJIS Division then passes the information it receives from DHS to the criminal justice agency.

**Individuals Impacted:**

Any individual, including U.S. persons: 1) who is being investigated; 2) who is being arrested and/or booked; 3) who is being transferred to another criminal justice agency; 4) with parole and probation activities; or 5) for whom any other law enforcement action is being taken against that individual for a potential or actual violation of a criminal statute.

**Data Elements:**

ACRIMe may return various information to the FBI CJIS Division about the individual, which the FBI CJIS Division then passes on to the criminal justice agency:

- Name and aliases;
- Date and place of birth;
- Identifiers, including Alien Registration number and FBI number;
- ICE office controlling the alien's Alien File (File Control Office); and
- Information regarding the legal status of the individual.

Please see DHS/ICE/PIA–020 for a more complete discussion of the data elements contained in ACRIMe.