FILED
United States Court of Appeals
Tenth Circuit

November 25, 2020

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEIVY ROMERO-LOPEZ, a/k/a Davie Romero-Lopez, a/k/a Jonathan Aria-Ramirez,

    Defendant - Appellant.

No. 19-1268

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:18-CR-00096-LTB-1)**

_____

Meredith B. Esser, Assistant Federal Public Defender, (Virginia L. Grady, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Denver, Colorado for Defendant-Appellant.

Marissa R. Miller, Assistant United States Attorney, (Jason R. Dunn, United States Attorney, with her on the briefs) Office of the United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

_____

Before **LUCERO**, **KELLY**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves the sentence of Mr. Deivy Romero-Lopez, who was convicted of illegally reentering the United States after being removed. 8 U.S.C. § 1326(a), (b)(1). The crime of illegal reentry begins when a noncitizen returns to this country after removal and continues until he or she is "found" in the United States. *United States v. Villarreal-Ortiz*, 553 F.3d 1326, 1330 (10th Cir. 2009).

Mr. Romero-Lopez pleaded guilty, admitting that he'd been found in the United States after his removal. Given his guilty plea and admission, the question here is not whether he committed the crime, but when.

The timing matters for his sentence because the Sentencing Commission dramatically increased the guideline ranges for individuals convicted of illegal reentry. Focusing on this increase, the parties disagree over whether Mr. Romero-Lopez had been "found" before the change went into effect. The district court concluded that he had been found after the change, triggering the increased guideline range. We uphold this conclusion under the plain-error standard.

**1. The guideline range turns on when Mr. Romero-Lopez was "found."**

The "starting point" for a sentence is the applicable guideline range. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1259 (10th Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). To determine that range, the district court needed to decide which annual version of the

2

guidelines to use because the Sentencing Commission had changed the applicable provision in November 2016. *Compare* U.S. Sent'g Guidelines Manual § 2L1.2 (U.S. Sent'g Comm'n 2015), *with* U.S. Sent'g Guidelines Manual § 2L1.2 (U.S. Sent'g Comm'n 2016), *and* U.S. Sent'g Guidelines Manual § 2L1.2 (U.S. Sent'g Comm'n 2018). Because of the change, the guideline ranges for illegal reentry sharply increased in November 2016.

The new version of the guidelines would apply only if Mr. Romero-Lopez's offense ended on or after the date of the change. *See Peugh v. United States*, 569 U.S. 530, 532-33 (2013) (concluding that the Ex Post Facto Clause forbids use of guidelines post-dating the offense if that version had increased the guideline range after commission of the offense); U.S. Sent'g Guidelines Manual § 1B1.11(b)(1) (U.S. Sent'g Comm'n 2018) (stating that if the Ex Post Facto Clause would forbid using the guideline range in effect at the time of sentencing, the court should use the guideline range in effect when the crime was committed).

Mr. Romero-Lopez argues that the old version applies because he had been "found," ending his offense, in July 2016—roughly four months before the Sentencing Commission increased the guideline ranges. The government disagrees with Mr. Romero-Lopez, arguing that he wasn't "found" until 2018. If Mr. Romero-Lopez is right about when his crime ended, the applicable guidelines would be those in effect before November

3

2016. If the government is right, the applicable guidelines would be those taking effect in November 2016.

The district court agreed with the government and applied the 2018 version of the guidelines. Under this version, Mr. Romero-Lopez's guideline range increased from 21–27 months to 57–71 months.

Mr. Romero-Lopez appeals, arguing that the district court erred by applying a version of the guidelines that had taken effect after the termination of his crime.

**2.   We review Mr. Romero-Lopez's appellate argument under the plain-error standard.**

In applying the 2018 version of the guidelines, the district court interpreted Mr. Romero-Lopez's guilty plea as a stipulation that he had been found in 2018.[1] Though Mr. Romero-Lopez challenges this interpretation, he didn't object in district court, so he forfeited his current argument and can prevail only by satisfying the plain-error standard. *United States v. Mann*, 786 F.3d 1244, 1249 (10th Cir. 2015).

Under this standard, Mr. Romero-Lopez must show that an obvious error affected his substantial rights. *Id.* This showing requires proof of a "reasonable probability" that the sentence would have been different without the alleged error. *United States v. Harris*, 695 F.3d 1125, 1130

---

[1]   Mr. Romero-Lopez pleaded guilty to an indictment stating that he had been found in the United States in January 2018.

4

(10th Cir. 2012) (quoting *United States v. Fields*, 516 F.3d 923, 944 (10th Cir. 2008)). A probability is considered "reasonable" if it is "sufficient to undermine confidence in the outcome." *United States v. Wolfname*, 835 F.3d 1214, 1222 (10th Cir. 2016) (quoting *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2017)).

**3. Mr. Romero-Lopez hasn't shown a reasonable probability that federal law-enforcement officers should have learned of his presence before November 2016.**

For the sake of argument, we may assume that the district court committed an obvious error in interpreting the guilty plea as a stipulation of when Mr. Romero-Lopez had been found. But did that obvious error affect his substantial rights? The answer turns on when his crime terminated. He admittedly had been removed before the government found him in the United States. But when was he found here? To answer, the district court had to decide when the federal government knew or should have learned through typical diligence that Mr. Romero-Lopez had illegally reentered the United States. *United States v. Villarreal-Ortiz*, 553 F.3d 1326, 1330 (10th Cir. 2009).

Local law-enforcement officials arrested Mr. Romero-Lopez in July 2016, so they knew by then that he was in the United States. But Mr. Romero-Lopez would be considered "found" only if his presence should have been discovered by federal officials, not local officials. *See United States v. Uribe-Rios*, 558 F.3d 347, 353 (4th Cir. 2009); *United States v.*

5

*Clarke*, 312 F.3d 1343, 1347 (11th Cir. 2002). The issue is thus whether local officials took action that would have alerted federal officials to Mr. Romero-Lopez's presence in the United States.

In 2017, Mr. Romero-Lopez was again arrested; this time, local officials recorded his fingerprints, triggering an electronic notification to federal authorities. And in 2018, federal immigration officials interviewed Mr. Romero-Lopez, leading to the current federal charge of illegal reentry. So little question exists that federal officials had learned of Mr. Romero-Lopez's presence in the United States by 2017 or 2018. Indeed, at sentencing, the district court stated "either that [2017] notification to ICE or the actual physical encounter on January 3, 2018, together with the admission on the guilty plea . . . convinces [the court] that the defense argument [about the applicability of the earlier guideline provision] must fail . . . ." R. vol. III, at 13–14.[2]

---

[2] The court said:

> [T]here are two things that persuade me that the 2016 date doesn't apply, nor does the 2015 guideline.
>
> First of all, under oath, at the plea hearing, the defendant admitted that he was found in the District of Colorado on January 3, 2018. That is a judicial admission, on the record, under oath.
>
> The fall-back date relied upon by the government of May 27, [2017,] can't arguably apply because he was identified and ICE was notified electronically of his Adams County location and arrest. So either that notification to ICE or the

6

Regardless of whether Mr. Romero-Lopez had been found in 2017 or 2018, the new guideline ranges would apply because they had taken effect in November 2016. *See* U.S. Sent'g Guidelines Manual § 2L1.2 (U.S. Sent'g Comm'n 2016); U.S. Sent'g Guidelines Manual § 2L1.2 (U.S. Sent'g Comm'n 2018). So if the district court had not relied on Mr. Romero-Lopez's admission in his guilty plea, would diligent federal officials have learned of Mr. Romero-Lopez's whereabouts before November 2016? We think it improbable at best.

The parties agree that federal authorities learn of a previously removed individual's presence through fingerprint data shared by local and

---

    actual physical encounter on January 3, 2018, together with the admission on the guilty plea . . . convinces me that the defense argument must fail about the earlier guideline calculation.

R. vol. III, at 13–14. Based on this language, the parties disagree about what the court meant.

The court certainly meant that federal officials had found Mr. Romero-Lopez in 2018. But what about 2017? The court's language is confusing, but the only plausible explanations are that either

- the district court misspoke, saying that the 2017 "found" date *couldn't* apply when the court meant to say that the 2017 found date *would* apply or

- the court reporter wrote "can't" when the court had actually said "can."

No other explanation makes sense because all of the court's statements (other than the single word "can't") suggest that the 2017 date applied as an alternative to the 2018 date.

7

federal authorities. Given this agreement, Mr. Romero-Lopez argues that fingerprints taken in July 2016 should have alerted federal officials to his presence in the United States. But was he fingerprinted in July 2016?

The parties disagree, but they didn't present any testimony in district court. Mr. Romero-Lopez instead relied there on the documents relating to his arrest. Those documents include the arrest report, which contains a section called "Fingerprinted" and includes boxes for "yes" and "no." The "no" box is checked; and elsewhere in the report, a box for "Fingerprint" is blank. Given the arrest report, the district court probably wouldn't have determined that Mr. Romero-Lopez had been fingerprinted at the time of his arrest in July 2016.

Without the fingerprints, federal officials could have learned of Mr. Romero-Lopez's presence only by combing through state arrest records to find his name, birthdate, address, and nationality. Discovery of this information would have required a Herculean effort, and federal officials would have had little reason to investigate the arrest of every foreign national in the absence of notification from local authorities. *See United States v. Bencomo-Castillo*, 176 F.3d 1300, 1304 (10th Cir. 1999) (holding that INS agents had no legal duty to perform jail checks on weekends or "research the criminal history of persons who have been released from custody"); *see also United States v. Clarke*, 312 F.3d 1343, 1348 (11th Cir. 2002) (concluding that the defendant was not "found" under 8 U.S.C.

8

§ 1326 when local officials hadn't notified immigration officials); *United States v. Mercedes*, 287 F.3d 47 (2d Cir. 2002).[3]

In light of the arrest report, Mr. Romero-Lopez hasn't shown a reasonable probability that he was found in July 2016. He was certainly found by 2017 or 2018; by then, however, the new, increased guideline ranges had taken effect. Any error would thus not have affected Mr. Romero-Lopez's substantial rights.

## 4. Conclusion

To prevail, Mr. Romero-Lopez needed to show a reasonable probability that the alleged error had affected his guideline range. He could make this showing only by proving that he'd been "found" in the United States before November 2016. To do so, he had to prove that federal law-enforcement officials had known or should have known of his presence in the United States before November 2016.

Before then, his presence was certainly known to local officials. But few people would expect federal officials to learn of every foreign national's arrest anywhere in the United States. Federal law-enforcement

---

[3] In *Mercedes*, the defendant argued that he had been "found" during a state arrest because federal immigration officials should have learned of his presence by reviewing his rap sheet. 287 F.3d at 55. The Second Circuit Court of Appeals rejected this argument, reasoning that federal immigration officials shouldn't bear responsibility "for any immigration-related information discovered in *state* investigations of the hundreds of thousands of prisoners in state custody at any given time." *Id.* (emphasis in original).

9

officials instead rely on fingerprint data to identify foreign nationals who have returned to the United States after being removed.

The district court had little reason to infer that Mr. Romero-Lopez had been fingerprinted in July 2016. So even if the district court had committed an obvious error, Mr. Romero-Lopez wouldn't have satisfied his burden of proving an effect on his substantial rights. We thus affirm the sentence.

Affirmed.

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

November 25, 2020

Jane K. Castro
Chief Deputy Clerk

Meredith B Esser
Office of the Federal Public Defender
Districts of Colorado and Wyoming
633 17th Street, Suite 1000
Denver, CO 80202

**RE:** **19-1268, United States v. Romero-Lopez**
Dist/Ag docket: 1:18-CR-00096-LTB-1

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc:     Marissa Rose Miller

CMW/jjh